UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KELLY GIBBS,

    Plaintiff,

v.                                                                                          CASE NO. 6:22-CV-719-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income benefits (SSI). *See* 42 U.S.C. § 405(g). Plaintiff argues that the agency's decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) did not properly weigh the medical source opinion from her treating psychiatrist. After considering Plaintiff's brief (doc. 21), the Commissioner's brief (doc. 22), Plaintiff's reply (doc. 23), and the administrative record (doc. 15), I find the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.[1]

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

I.  *Background*

Plaintiff Kelly Gibbs, born on November 13, 1967, was 48 years old on her alleged amended disability onset date, March 31, 2016 (Tr. 114). She claims disability due to rheumatoid arthritis in all major joints, supraventricular tachycardia, anxiety, and depression (Tr. 180). Plaintiff attended two years of college and has past relevant work as an administrative clerk (Tr. 52). She testified that in 2013 she was let go from her last job because she was making a lot of mistakes (Tr. 53).

Given her alleged disability, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (SSI) (Tr. 485-493, 495-503). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 179-201, 205-226). Plaintiff then requested an administrative hearing (Tr. 336). Per Plaintiff's request, the ALJ held a telephonic hearing on April 17, 2020, due to the extraordinary circumstances presented by the Coronavirus Disease 2019 (Covid-19) Pandemic (Tr. 99-152). Following the hearing, the ALJ issued a decision on June 4, 2020 (Tr. 272-295). The ALJ opined that Plaintiff was not disabled (Tr. 289). The Appeals Council granted Plaintiff's request for review, and remanded the matter to an ALJ for resolution of four particular issues. *See* AC Order, Tr. 296-301.

A new ALJ held a telephonic hearing on June 16, 2021 (Tr. 42-75). Following the hearing, that ALJ issued a decision on July 28, 2021 (Tr. 13-41). In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019, and had not engaged in substantial gainful

2

activity since her alleged amended onset date, March 31, 2016 (Tr. 18-19). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments through the date last insured: degenerative disc disease; migraines/headaches; obesity; depressive, bipolar, and related disorders; and anxiety and obsessive-compulsive disorders (Tr. 19). Notwithstanding the noted severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> … the claimant can frequently stoop and kneel. The claimant can occasionally balance, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant is limited to occupations allowing for a sit/stand option, defined as allowing a person to sit or stand alternatively, at will, provided an individual is within employer tolerances for off-task behavior. The claimant must avoid concentrated exposure to hazards such as the use of moving machinery and unprotected heights. The claimant is limited to occupations with no more than a moderate noise intensity level as that term is defined by the Dictionary of Occupational Titles. The claimant is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements, and involving only simple work-related decisions and routine workplace changes. The claimant is limited to no interaction with the public and only occasional interaction with coworkers and supervisors.

(Tr. 23). In formulating Plaintiff's RFC, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529, 419.929, and SSR 16-3p (Tr. 24).

The ALJ opined that Plaintiff is unable to perform her past relevant work as an administrative clerk (Dictionary of Occupational Titles number (DOT) 219.362-010) (Tr. 32). Given Plaintiff's background, and the RFC, the vocational expert (VE) testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as the jobs of routing clerk (DOT 222.687-022, SVP 2, Light), with approximately 104, 820 jobs available nationally; checker (DOT 222.687-010, SVP 2, Light), with approximately 8,796 jobs available nationally; and router (DOT 222.587038, SVP 2, Light), with approximately 34,924 jobs available nationally. (Tr. 33). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33). Plaintiff then timely appealed, and the Appeals Council denied her request for review (Tr. 1-7). Thereafter, Plaintiff filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

  II.  *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or

4

psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment

but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771

F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III. *Discussion*

Plaintiff raises only one issue: that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly weigh the opinions of her treating psychiatrist, Vinutha Reddy, M.D. In particular, Plaintiff asserts that the ALJ erred by finding "unpersuasive" Dr. Reddy's opinions that she is extremely limited in her ability to interact with others; and that she is markedly limited in her ability to understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage oneself. Plaintiff also asserts the ALJ erred in evaluating Dr. Reddy's opinions that she has extreme limitations in understanding and carrying out detailed but uninvolved written or oral instructions; could only maintain concentration and attention for less than thirty minutes at a time; that she is unable to maintain regular attendance and punctuality within customary tolerances; that she requires enhanced supervision; that she cannot not work appropriately with the public or coworkers; and can only sometimes do so with supervisors; that she does not have the

ability to maintain socially appropriate behavior; that she cannot respond appropriately to changes in the work setting; and that her impairments would cause her to be off task for twenty-five percent of the workday and absent more than four days per month (Tr. 2567-2568). Plaintiff questions the ALJ's finding that Dr. Reddy's opinion was unsupported as it appeared to be largely based on her own allegations and her finding that Dr. Reddy's opinion was inconsistent with objective medical evidence and her reported daily activities and functioning. She states that the ALJ failed to recognize that mental health providers rely at least in part on their patients' subjective allegations. She also asserts that the ALJ must "build an accurate and logical bridge" between the evidence and her findings by explaining how she considered the supportability and consistency factors. Accordingly, Plaintiff maintains that remand is warranted.

In response, the Commissioner states that after thoroughly discussing the 2,500-page record and considering various other opinions (that Plaintiff does not contend the ALJ incorrectly considered), the ALJ properly considered Dr. Reddy's opinion. The Commissioner maintains that the ALJ complied with the new regulations and that substantial evidence supports her decision.

The Social Security Administration revised its regulations regarding consideration of medical evidence and those revisions are applicable to all claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim March 21, 2018, the revised regulations apply. 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ is not required to

give specific weight to a treating source opinion. The ALJ must, however, evaluate and articulate the persuasiveness of a medical opinion by considering several factors, including whether the opinion is supported by the evidence, the length of treatment relationship and relationship with the claimant, and the specialization of the provider. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2); 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), (4), & (5); 416.920c(c)(3)(i)-(v), (4), & (5).

In evaluating the persuasiveness of Dr. Reddy's opinion, the ALJ stated:

> In May 2021, Dr. Reddy stated that the claimant experienced marked and extreme mental impairment limitations (Exhibit B37F). The undersigned finds this opinion evidence unpersuasive. The assessment is unsupported by clinical

records and appears to be largely based upon the claimant's allegations (Id. at 6-9). Dr. Reddy's assessment is also inconsistent with the objective medical evidence, as well as the claimant's activities of daily living and reported functioning, which has included travel to Florida. The objective, medical and overall evidence is consistent with no more than moderate limitations as discussed at Finding 4 above and herein (Exhibits B1F/23; B2F/5-6; B4F/315,331,334,339-340, 344, 351, 360, 362, 365, 371- 372,378,386-387,392-393,404,413,423,435-436,444,451,456,463,472,485,506,516-517,  537,  542-543;    B5F/51;    B8F/8,11,14,24,27,31,43,58,105,110;    B9F/5,8,22; B12F/7,11,16; B13F/4,7; B15F/2,9; B16F/8,30; B18F/8; B21F/17-18,32-33,35,39,42-43; B22F/6,43,55; B23F/5; B25F/8- 10,14; B26F/4; B29F/8,19; B34F/5; B35F/4,7-8,53; B36F/5,22).

(Tr. 31). While the ALJ's discussion of Dr. Reddy's opinions is brief, her earlier discussion of the medical evidence provides additional support. In particular, the ALJ explained that the medical evidence does not support Plaintiff's assertions of disabling mental impairments and symptoms (Tr. 29). The ALJ discussed specific evidence of Plaintiff's mental status examinations; her ability to cooperate pleasantly with examiners; and her normal mood, affect, thought process, thought content, attention, concentration, memory, judgment, and insight (Tr. 29). The ALJ also noted Plaintiff's denial of anxiety and depression, nervousness, mood swings, and memory deficits (Tr. 29). The ALJ accurately summarized consultative examiner Dubey's report, noting Plaintiff's logical thought process and poor concentration with a need for redirection (but no need for repetition of simple questions or directions) (Tr. 29). The ALJ noted Plaintiff's calm but depressed and tearful demeanor, and her average intellect and knowledge. The ALJ discussed her daily functioning, including her ability to maintain relationships with her adult children and to date her ex-husband (Tr. 29). The ALJ discussed Plaintiff's emergency room visit under the Baker Act, noting that Plaintiff

10

reported to a law enforcement officer that "all of this was coming from a bipolar schizophrenic friend of the family and that the claimant was concerned that he wanted to steal $6,000 in cash that was in her house" (Tr. 28).[2] The ALJ also noted that Plaintiff used marijuana; reported she was unemployed due to disability from Ramsey Hunt's Disease; and reported anxiety due to her health complaints and her "living situation" (she had no place of her own; she lived with her ex-husband one week, then her daughter the next week) (Tr. 29).

As demonstrated by the above quote from the ALJ's decision, the ALJ addressed both the supportability and the consistency of Dr. Reddy's opinion. The ALJ found Dr. Reddy's opinion unsupported by her own clinical records and inconsistent with other record evidence (Tr. 31). Although the evidence shows Plaintiff complained of depression, anxiety, and memory problems on some dates during the relevant time frame, she generally displayed no distress and her mental status examinations were largely normal. Dr. Reddy treated Plaintiff only from April 2020 through May 2021 (Tr. 2118, 2445-2469) and completed a Treating Source Statement on May 19, 2021 (Ex. 37F). Notably, Dr. Reddy did not begin treating Plaintiff until more than four years after her alleged amended onset date (March 31, 2016) (Ex. 37F). According to the initial evaluation, dated April 23, 2020, Plaintiff was referred to Dr. Reddy by her neurologist, Dr. Huang. Plaintiff relayed to Dr.

---

[2] As the ALJ noted, the ER records show that the wounds on her forearm and fingers were consistent with an accidental injury and that she was sent home for not meeting Baker Act criteria (rather than being admitted to the hospital) (Tr. 29).

11

Reddy that Dr. Huang "check[ed] her for dementia" and told her she did not have dementia as her brain MRI and EEG were normal. Plaintiff reported to Dr. Reddy that she is prescribed Cymbalta for pain and Trileptal for seizures (Tr. 2444). Dr. Reddy explained that the Cymbalta could also be used to treat depression and anxiety and suggested increasing her dosage. Plaintiff agreed. Progress notes from phone appointments (due to Covid 19) from 2020 and 2021 with Dr. Reddy reveal that Plaintiff spent time living with relatives in Florida and in Ohio. She reported that she does not leave the house but tries to help with dinners and cleaning up in whatever house she stays (Tr. 2515). The progress notes show telephonic appointments at regularly scheduled intervals and indicate her treatment plan consistently included medication management and supportive therapy (Tr. 2445-2471).

In discussing the persuasiveness of Dr. Reddy's opinions, the ALJ cited to Dr. Reddy's initial evaluation (Tr. 31 citing to 35F/4, 7-8). This initial evaluation indicates "phone evaluation. Pt in Florida" … "51 yr old single female, mother has no place of her own, lives … between her son, daughter, and ex-husband who lives in Florida now. Pt has a long [history] of depression, anxiety [increased] since 2012 when she was diagnosed with multiple medical problems, affected her balance [ ] lethargy. Treated [with] Cymbalta [and] Buspar- not taking as prescribed … chronic SI" (Tr. 2441). Another portion of Dr. Reddy's initial psychiatric evaluation that the ALJ cited states, "smokes marijuana ½ [ ] daily- onset 1 yr ago. Helps [with] nausea and headache. Denies use of alcohol/ illicit drugs. [History] of abusive relationships. They cheated on her. Trust has been a problem" (Tr. 2442). Dr. Reddy elaborated

12

on Plaintiff's mental status findings, stating "Symptoms of depression chronic [increased] recently … [with increased] anxiety, fear of getting sick." (Tr. 2442).

In evaluating Dr. Reddy's opinion, the ALJ also cited to Dr. Reddy's treatment notes, stating:

> claimant received a treatment regimen that included medication and counseling through 2021 (Exhibit B21F/31; B35F). The claimant denied SI and HI. The objective, medical and overall evidence, including the course of treatment, do not support disabling impairments and limitations for 12 continuous months or more.

(Tr. 29). Looking at Dr. Reddy's treatment notes, I find substantial evidence to support the ALJ's statement. In particular, Dr. Reddy's note from a May 7, 2020, follow up phone appointment indicates Plaintiff reported that:

> with [increased] dose of Cymbalta 60 mg bid mellow, calm, anxious feeling in the tummy has improved. The suicidal thoughts are less frequent, no intent/plan … her best friend from Columbus is visiting her in Florida she has been out to beach [and] other places spending quality of time [with] friend. Pt has talked about co-dependency [and] wanting to be independent. 3 wks ago, had hearing SSDI

(Tr. 2443). Dr. Reddy commented on Plaintiff's mental status: "Appearance/Demeanor/ Activity/ Speech: [Social Security benefits] denied twice before. If it gets approved she will have income of her own;" "Thought content – symptoms of depression [and] anxiety are improving;" "Perception: [history of] … hallucinations; "Mood/affect: better, even keeled;" "Suicidal ideations: not at immediate risk" (Tr. 2445). In a subsequent note, dated June 4, 2020, Dr. Reddy indicated "Pt [said current medications] helping to cope well with symptoms of depression and anxiety. Help to clear distressing thoughts from past, started practicing

13

meditation, it is helping to be more aware of her internal thoughts and to be in the present moment.  She is still in Florida" (Tr. 2448).  Dr. Reddy commented on Plaintiff's mental status: "Appearance/Demeanor/Activity/Speech:  Sounded good cooperative, coherent;" "Thought Process: logical, organized;" "Thought Content: stable;" "Perception: no hallucinations;" "Suicidal/Homicidal Ideations: Not at immediate risk;" "Cognition: intact;" "Insight/Judgment: good;" "Other: cut down on smoking marijuana" (Tr. 2448).  Dr. Reddy's treatment notes from 2021 also provide substantial evidence to support the ALJ's conclusion that Dr. Reddy's treatment does not support disabling impairments and limitations for 12 continuous months or more.  In particular, Dr. Reddy's February 18, 2021, treatment note states, "… she is still in Florida, working temporarily as cook at MH group home" (Tr. 2468).  Dr. Reddy noted that "working as a cook keeping her occupied, making some money … not depressed, coping well [with] anxiety" (Tr. 2468).  Dr. Reddy's March 18, 2021, note states, "returning to Columbus to help son with newborn" (Tr. 2471).

Plaintiff complains about the ALJ's comment that Dr. Reddy "largely based [his opinions] upon the claimant's allegations" (Doc. 21 at 13).  Plaintiff is correct in noting that the subjective nature of mental impairments necessitates at least some reliance on a patient's subjective reports (Doc. 21 at 13).  *See generally McVey v. Saul*, case no. 8:18-cv-2304-T-SPF, 2020 WL 2570073 (M.D. Fla. May 21, 2020) (citing *Roundtree v. Saul*, case no. 8:18-cv-1524-T-SPF, 2019 WL 4668174, *4 (M.D. Fla. Sept. 25, 2019) (quoting *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016))) (a "psychological assessment is by necessity based on the patient's report of symptoms

14

and responses to questioning" and "it's illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because the opinion draws from the claimant's reported symptoms").  This case, however, is not one where the ALJ illogically dismissed a professional opinion simply because it draws from a claimant's reported symptoms.  Rather, in this case, the ALJ noted that Dr. Reddy's opinion was "unsupported by clinical records and appears to be largely based upon the claimant's allegations."  *See* R. 31.  My review of the record reveals substantial evidence that supports the ALJ's evaluation of the supportability of Dr. Reddy's opinion.

Similarly, I find that there is substantial evidence to support the ALJ's evaluation of the consistency of Dr. Reddy's opinion.  As quoted above, the ALJ found that Dr. Reddy's opinion was inconsistent with the other evidence of record.  In particular, the ALJ opined that the medical evidence as a whole and Plaintiff's ability to care for herself and to maintain relationships with her adult children and ex-husband (and to travel back and forth to stay with them) were consistent with the no more than moderate limitations.  Looking at the records the ALJ cited, I find support for this conclusion.  For instance, the ALJ cited to a note from Plaintiff's treating neurologist, Dr. Huang, dated April 18, 2019 (Tr. 2244-2245).  At this office visit, Dr. Huang reviewed Plaintiff's brain MRI that showed no evidence of multiple sclerosis, her EEG that was normal, and her bloodwork that was unremarkable.  Dr. Huang opined that Plaintiff "is very concerned about her memory and claimed that she cannot remember anything however there seem[ ] to be [ ] psychogenic components" (Tr. 2244-2245).  The ALJ also cited to Plaintiff's July 1, 2020, ER visit for complaints of chest pain.

15

The ER records show that Plaintiff presented with appropriate mood and affect and normal judgment and insight. The ER doctor noted she had "multiple medical problems that she reports, and my impression is she is a little bit somatically preoccupied" (Tr. 2529). Lastly, the ALJ cited to a psychiatric diagnostic assessment dated July 24, 2019, that shows Plaintiff reported her medications helped her, she experienced no side effects from them, her mental health concerns had not ever impacted her in the work setting, and she was currently unemployed due to disability from Ramsey Hunts disease (Tr. 2501, 2502, 2511). As the ALJ noted, the voluminous medical records in the main pertain to Plaintiff's physical, not mental, health. And, as the ALJ noted, these mental health records reveal that Plaintiff's generalized anxiety disorder required only medication management and supportive therapy (Tr. 2115-2179, 2436-2524).

I find unavailing Plaintiff's argument that the ALJ did not build a logical bridge between her finding and the evidence. (*See* Doc. 21 at 13; Doc. 23 at 3). The ALJ is under no obligation to "bridge" every piece of evidence she finds inconsistent with a specific opinion. In fact, the regulations suggest the opposite. *See* C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). The regulations do not require the ALJ to explain her consideration of the consistency and supportability of each opinion from the same source individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also* 20 C.F.R. §§ 404.1520c(b)(1),

416.920c(b)(1). Ultimately, I find that the ALJ fully and explicitly addressed the basis for her finding that Dr. Reddy's opinion was unpersuasive. (Tr. 31; *see also* Tr. 23-29).

It is noteworthy that Plaintiff does not point to any of Dr. Reddy's treatment notes as support for Dr. Reddy's opinions set forth in her Treating Source Statement. Rather, she points only to the Treating Source Statement itself. However, even assuming Plaintiff provided ample evidentiary support for her allegations that her conditions and resulting limitations are disabling, which is debatable, the Court cannot re-weigh evidence and its scope of review is limited. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' ….") (alteration in original). When reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. Here the ALJ's analysis complies with the new regulations and the administrative record

contains enough evidence to support the ALJ's factual findings. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Thus, I find that the ALJ did not err in evaluating the persuasiveness of Dr. Reddy's opinion.

  IV. *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 22nd day of June, 2023.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc: Counsel of Record

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE